57944

30090320200005



**JACKSON LLP**
Healthcare Lawyers

CONNOR JACKSON, Partner \ IL, NY, TX, WI, MI
ERIN JACKSON, Managing Partner \ IL
HALEY GUION, Attorney \ IL
ALEXANDRA NAVRATIL, Associate Attorney \ IL
JUNILLA SLEDZIEWSKI, Of Counsel \ IL, NM, FL
CHRISTIAN WARHOLA, Of Counsel \ IL, NY, CT

Contact the Sender
**CONNOR JACKSON**
Founding Partner

Assistant: (855) 633-2339
Direct: (847) 440-5028
Email: Connor@JacksonLLP.com
Web: JacksonLLP.com

**Via Fed Ex Tracking #: 772052831350**

Steven Vienneau
Program Integrity Manager
SGS Southeastern Unified Program Integrity Contractor
3450 Lakeside Drive, SGS Suite 201
Miramar, FL 33027

**SE UPIC**

NOV 1 2 2020

**MIR - FL**

November 11, 2020

Re:   **Kestrel Medical LLC Rebuttal Statement**
      **October 28, 2020 Notice of Suspension of Medicare Payments**
      **Reference Number CSE-200903-00010**

Dear Mr. Vienneau:

We represent Kestrel Medical LLC. This letter constitutes Kestrel Medical's rebuttal statement to the October 28, 2020, Notice of Suspension of Medicare Payments letter ("**Notice Letter**," attached as Exhibit A).

Kestrel Medical is properly accredited as a supplier of durable medical equipment, prosthetics, orthotics, and other supplies (*see* Exhibit B). The Notice has identified five claims (collectively the "**Five Claims**," *see* Exhibits C–G.1) to support the freeze. However, the suspension is unjustified, and good cause exists to remove the suspension immediately. For all claims, Kestrel Medicals follows strict processes that balance the medical needs of millions of seniors entitled to Medicare benefits while acknowledging the Medicare program's finite resources – precisely what occurred for the Five Claims. Specifically, the Five Claims are properly payable by Medicare because for each claim:

   (i)    a valid physician-patient relationship existed;
   (ii)   the patient consented to receive the equipment delivered; and

---

**Return Mail Address** 1817 Church St., Evanston, Illinois 60201          JACKSONLLP.com

**EXHIBIT D**

KESTREL_017500

(iii) the ordering provider certified that the equipment is reasonable and medically necessary.

The medical records of the Five Claims support these conclusions. In short, Kestrel Medical has demonstrated a pattern of unwavering compliance with the Medicare rules, policies, and program instructions, and the suspension should be removed immediately.

## I    Background: Kestrel Medical operates with integrity and consistent with all Medicare regulations.

Kestrel Medical is a small Wisconsin business that provides critical medical supplies to patients entitled to receive integral benefits under the Medicare program. Its products help patients reduce neck, arm, back, and leg pain for the aging and disabled population and enable dignified participation in day-to-day activities.

Since 2018, Kestrel Medical has been and remains a Centers for Medicare and Medicaid Services ("CMS")-accredited supplier. Before delivery of products to beneficiates, Kestrel Medical confirms (i) proof of a valid physician-patient relationship from the ordering physician; (ii) medical eligibility; (iii) a qualifying diagnosis from the signed doctors' orders; and (iv) the physician's PECOS status. After confirming the preceding, Kestrel Medical speaks with the patient to review and confirm the order and shipping address. Kestrel Medical does not provide its products to beneficiaries or bill Medicare until it confirms all elements' completion.

In summary, Kestrel Medical ensures that the proper items are sent to the correct beneficiary and that they are correctly payable as follows:

(i)     It only fulfills orders made by eligible professionals.

(ii)    It only delivers equipment to beneficiaries that the ordering physicians have deemed reasonable and medically necessary (in particular, this is confirmed by the ordering physician's signature).

(iii)   It utilizes an experienced and trustworthy third-party billing expert to ensure payment compliance.

(iv)    It maintains an error notification system to facilitate prompt notification of equipment delivery errors and claim payment and processing.

(v)     It fulfills orders to patients authorized by CMS to receive Medicare benefits, and it is properly accredited to do so.

(vi)    It promptly notifies CMS of overpayments and cooperates with CMS to resolve issues.

For these reasons, Kestrel Medical was entitled to pre-suspension notice because its history demonstrates it is not a threat to the Medicare program's integrity. For the same reasons, the freeze should be removed, and this matter should be closed.

Kestrel Medical LLC Rebuttal Statement – Before the Number CSP-2018-DA0010

KESTREL_017501

## 2   Legal Standard: Orthotics are payable when prescribed based on prudent clinical judgment by an eligible professional.

The Medicare program is a federal health insurance program overseen by CMS that provides health insurance for retirement-age individuals.[1] The benefits provided to an individual by the Part B insurance program include entitlement to have payment made for orthotics furnished by an entity under an arrangement with the prescribing physician.[2] The term "orthotics" means "leg, arm, back, and neck braces, and artificial legs, arms, and eyes, including replacements if required because of a change in the patient's physical condition."[3] CMS accepts claims from Medicare patients who meet specific eligibility requirements. Specifically, an individual who would like coverage for Medicare Part B, medical insurance, must be aged 65 or older, disabled, or have End-Stage Renal Disease.[4]

Part B Medicare only covers certain medical and other health services, including medically necessary durable medical equipment, prosthetics, orthotics, and other supplies ("DMEPOS").[5] This includes arm, leg, back, and neck braces.[6] Thus, the orthotics for the Five Claims are properly payable because they fall squarely within this definition.

The Medicare program reimburses providers and suppliers for delivering medical services. A supplier is, in pertinent part, an entity that furnishes health care services under Medicare.[7] Any participating supplier must have an agreement with CMS to participate in Part B of Medicare.[8] Accredited DMEPOS suppliers are accredited by a recognized independent accreditation organization approved by CMS under extensive and strict requirements.[9] Therefore, as an accredited supplier, Kestrel Medical has permission from CMS to submit claims for reimbursement to Medicare, both in general and for the Five Claims at issue.

Medicare pays for preventive services and medically necessary services.[10] These can also be referred to as covered professional services, which are furnished by an eligible professional.[11]

---

1   *See* "What's Medicare?", *available at*:
https://www.medicare.gov/what-medicare-covers/your-medicare-coverage-choices/whats-medicare (last accessed Nov. 5, 2020).
2   42 U.S.C. § 1395k(a)(2)(I).
3   42 U.S.C. § 1395x(s)(9).
4   *See* "Original Medicare (Part A and B) Eligibility and Enrollment", *available at*:
https://www.cms.gov/Medicare/Eligibility-and-Enrollment/OrigMedicarePartABEligEnrol (last accessed Nov. 5, 2020).
5   *See* "What Part B covers", *available at*:
https://www.medicare.gov/what-medicare-covers/what-part-b-covers (last accessed Nov. 5, 2020).
6   *See* "Braces (arm, leg, back, & neck)", *available at*:
https://www.medicare.gov/coverage/braces-arm-leg-back-neck (last accessed Nov. 5, 2020).
7   42 C.F.R. § 400.202.
8   *See* 42 C.F.R. § 400.202.
9   42 C.F.R. § 424.57.
10   *See* "What Part B covers", *available at*:
https://www.medicare.gov/what-medicare-covers/what-part-b-covers (last accessed Nov. 5, 2020).
11   42 U.S.C. § 1395w-4(k)(3)(A).

Case 2:24-cr-00040-JPS    Filed 01/24/25    Page 3 of 98    Document 26-4

KESTREL_017502

Eligible professional includes physicians and nurse practitioners.[12] Medical necessity means health care services that a health care professional exercising prudent clinical judgment would provide to a patient.[13] To be necessary means something is "essential" and "absolutely needed."[14] Accordingly, because every ordering professional qualifies as an eligible professional and deemed all orthotics in question reasonable and medically necessary in their professional judgment, Kestrel Medical was proper to submit these claims to Medicare.

CMS, or a Medicare contractor, may suspend Medicare payments to suppliers if "in cases of suspected fraud…CMS or the Medicare contractor has consulted with the Office of the Inspector General, and, as appropriate, the Department of Justice, and determined that a credible allegation of fraud exists against a…supplier, unless there is good cause not to suspend payments."[15]

CMS may find good cause exists not to continue to suspend payments to an entity against which there are credible allegations of fraud if it determines that a payment suspension or a continuation of the suspension is not in the Medicare program's best interests.[16] Fraud is an intentional deception or misrepresentation made by a person who knows that the deception could result in an unauthorized benefit for himself or some other person.[17] Examples of credible fraud allegations are those from fraud hotline complaints, claims data mining, and patterns identified through provider audits, civil false claims cases, and law enforcement investigations.[18] An allegation of fraud is only credible if it has "indicia of reliability."[19] Indicia means distinctive marks and indications.[20] The term reliable stems from rely, meaning "dependent."[21]

But Kestrel Medical has never been the subject to any of these allegations, and indicia of reliability support none. On the contrary, Kestrel has submitted pertinent evidence in direct conflict to the allegations of fraud that demonstrate the claims are correctly payable. As such, the suspension of Medicare payments should be removed.

---

12    *See* 42 U.S.C. § 1395w-4(k)(3)(B)(i)-(iv).
13    *See* Medical Necessity Definitions, *available at:* https://www.cigna.com/health-care-providers/coverage-and-claims/policies/medical-necessity-definitions.
14    "necessary." Merriam-Webster, *available at:* https://www.merriam-webster.com/dictionary/necessary.
15    42 C.F.R. § 405.371(a)(2).
16    42 C.F.R. 405.371(b)(iv).
17    *See* 42 C.F.R. § 455.2 – Definitions.
18    42 C.F.R. § 405.370 – Definitions.
19    42 C.F.R. § 405.370.
20    "indicia." Merriam-Webster, *available at:* https://www.merriam-webster.com/dictionary/indicia (last accessed Nov. 5, 2020).
21    "rely." Merriam-Webster, *available at:* https://www.merriam-webster.com/dictionary/rely (last accessed Nov. 5, 2020).

KESTREL_017503

3    **The suspension should be removed because good cause exists, and pertinent evidence demonstrates that the claims are properly payable.**

The Notice relied on the following to support the freeze, but each is inaccurate and unsupported.

      (i)    The beneficiary has no relationship with the ordering physician

      (ii)   Orthotics not reasonable and necessary.

      (iii)  Orthotics refused or returned.

      (iv)  Orthotics not received as billed.

The above is demonstrably false, based on the medical records, delivery slips, order confirmation via phone, and tracking numbers.

### 3.1    All the Five Claims resulted from a valid physician-patient relationship between the patient and the ordering physician.

The doctor-patient relationship is established upon "a consensual relationship in which the patient knowingly seeks the physician's assistance and in which the physician knowingly accepts the person as a patient."[22] A valid physician-patient relationship exists for the Five Claims because records from the ordering physicians include chart notes with extensive communication between the physician and patient about the patient's protected health information.[23] Specifically:

*A Patient-Physician Relationship Existed for all Five Claims*[24]

| Patient | Ordering physician verbatim notes from medical record |
|---------|-------------------------------------------------------|
| ██████ | "Patient reports chronic knee left, knee right pain since 1-3 years. Patient states pain is achy, sharp with a pain scale of 8 and pain worsens with movement. Pain is caused by Rheumatoid Arthritis and is described as constant. Previous treatments with heat, ice, and rest have been unsuccessful to control pain level."[25]<br><br>"Patient reports chronic lower back pain since 1-3 years. Patient states pain is achy, sharp with a pain scale of 8 and pain worsens with movement. Pain is caused by Rheumatoid Arthritis and is described as constant. Previous treatments with heat, ice, and rest have been unsuccessful to control pain level."[26] |

---

22    Chipidza, Fallon E et al. "Impact of the Doctor-Patient Relationship." The primary care companion for CNS disorders vol. 17,5.

23    Exhibit C-G (patient medical records).

24    *See* Exs. C – G (patient medical records).

25    *See* Ex. C-01.

26    *See* Ex. C-02

5

KESTREL_017504



"Patient reports chronic left knee, right knee pain for 4 years. Patient states pain is achy with a pain scale of 10 and pain worsens with movement. Pain is described as constant."[27]

"Patient describes the pain in the back as stabbing and being at a level 8 on a scale from 1 to 10 with 1 being mild pain and 10 being severe pain. The patient has had constant pain for 2 years. The back pain the patient is experiencing appears to have been caused by osteoarthritis. Conditions that cause or aggravate the back pain include standing, walking. Treatments previously tried by the patient include over the counter medication."[28]

Patient describes the pain in the knee as stabbing and being at a level 8 on a scale from 1 to 10 with 1 being mild pain and 10 being severe pain. The patient has had constant pain for 2 years. The knee pain the patient is experiencing appears to have been caused by osteoarthritis. Conditions that cause or aggravate the knee pain include standing, walking. Treatments previously tried by the patient include over the counter medication."[29]

"Mr. ▮▮▮ described his pain as 8 lumbar. Mr ▮▮▮ lumbar pain has been constant for 5 years plus. Mr. ▮▮▮ chief complaint is lumbar pain, which is associated with a level 8. The patient stated that standing aggravates the condition, temporarily resulting in higher pain levels. Mr. ▮▮▮ has indicated that his lumbar pain makes it difficult to move."[30]

"Mr. ▮▮▮ described his pain as 8 sharp pain. Mr. ▮▮▮ shoulder pain has been constant for 5 years plus. Mr. ▮▮▮ chief complaint is shoulder pain, which is associated with a level 8. The patient stated that working around the house aggravates the condition, temporarily resulting in higher pain levels. Mr. ▮▮▮ has indicated that his shoulder pain makes it difficult to move."[31]

"Mr. ▮▮▮ described his pain as 8 sharp pain. Mr. ▮▮▮ knee pain has been constant for 5 years plus. Mr. ▮▮▮ chief complaint is knee pain, which is associated with a level 8. The patient stated that walking aggravates the condition, temporarily resulting in higher pain levels. Mr. ▮▮▮ has indicated that his knee pain makes it difficult to move."[32]

"The patient reports chronic pain Left Knee pain from 1 to 3 years. The patient states the pain is achy, sharp with a pain scale of 8 and pain worsens with

---

27    *See* Ex. D-01
28    *See* Ex. E-03.
29    *See* Ex. E-05.
30    *See* Ex. F-02.
31    *See* Ex. F-06.
32    *See* Ex. G-10.

KESTREL_017505

movement. Pain is described as constant. The patient has been to a physical therapist and has had previous surgery to treat this pain."[33]

In each of the Five Claims, the medical records confirm that each patient suffered significant pain during movement. In other words, the patient sought out the physician's medical services to address the patient's medical condition. The above notes are pertinent and contradictory evidence that support the existence of a physician-patient relationship in all Five Claims. The suspension should be removed.

### 3.2    The ordering physician confirmed medical necessity and reasonableness.

Kestrel Medical knee braces, arm braces, back braces, and suspension sleeves are reasonable and medically necessary for all Five Claims. The ordering physicians certified that the prescription was based on their clinical judgment and assessment of the patients' needs.

**Clinical Proof of Reasonableness and Medical Necessity**

| Patient | Ordering provider's notes establishing reasonableness and medical necessity |
|---|---|
| | Ordering provider Dr. Betty Abban, MD noted (emphasis added): |
| | *"Based on my evaluation of the patient's condition*, I am ordering the following device(s) Brace (Back), includes fitting and adjustment. The patient has been instructed to wear the device daily, as needed. The benefits of this device, which is an alternative, non-invasive method to potentially relieve pain has been explained to the patient who is interested in this treatment. *Based on my Assessment, I have determined it is medically necessary and appropriate to prescribe treatment today*. For the patient's complaint of pain, I am prescribing this device. The patient will benefit by helping address any or all of the following: Give support to weak muscles, improve patient's pain, improve patient's function, increase performance in activities of daily living, improve ambulation, reduce medications, slow degeneration, provide stability, provide support. To reduce pain by restricting mobility of the trunk; To reduce the risk of medical problems escalating patient's present condition. To facilitate healing following an injury or surgical procedure to the spine or related soft tissues; To support weak spinal muscles and/or a deformed spine. If patient's pain persists or worsens and/or there is any acute trauma or injury related to this pain, patient agrees and understands to go to ER or follow up with PCP for further testing and imaging that may be immediately necessary. *By my signature, I am prescribing the items listed above and certify that the above-prescribed item(s) is medically indicated and necessary* |

---

33    *See* Ex. G-01 and 07.

*and consistent with current standards of medical practice and treatment of this patient's physical condition."*[34]

"Based on my evaluation of the patient's condition, I am ordering the following device(s) Brace (Knee), INCLUDES FITTING AND ADJUSTMENT. The patient has been instructed to wear the device daily, as needed. The benefits of this device, which is an alternative, non-invasive method to potentially relieve pain has been explained to the patient who is interested in this treatment. *Based on my Assessment, I have determined it is medically necessary and appropriate to prescribe treatment today.* For the patient's complaint of pain, I am prescribing this device. The patient will benefit by helping address any or all of the following: Give support to weak muscles, improve patient's pain, improve patient's function, increase performance in activities of daily living, improve ambulation, reduce medications, slow degeneration, provide stability, provide support. If patient's pain persists or worsens and/or there is any acute trauma or injury related to this pain, patient agrees and understands to go to ER or follow up with PCP for further testing and imaging that may be immediately necessary. *By my signature, I am prescribing the items listed above and certify that the above-prescribed item(s) is medically indicated and necessary and consistent with current standards of medical practice and treatment of this patient's physical condition."*[35]

Ordering provider Dr. Marianna Zelenak, DO, noted (emphasis added):

"*Based on my evaluation of the patient's condition*, I am ordering the following device(s) Brace (Knee), includes fitting and adjustment. The patient has been instructed to wear the device daily, as needed. The benefits of this device, which is an alternative, non-invasive method to potentially relieve pain has been explained to the patient who is interested in this treatment. *Based on my Assessment, I have determined it is medically necessary and appropriate to prescribe treatment today.* For the patient's complaint of pain, I am prescribing this device. The patient will benefit by helping address any or all of the following: give support to weak muscles, improve patient's pain, improve patient's function, increase performance in activities of daily living, improve ambulation, reduce medications, slow degeneration, provide stability, provide support."[36]

Ordering provider Dr. Simon Grinshteyn, MD noted (emphasis added):

"The patient has had stabbing constant pain in their back for 2 years. Conditions that cause or aggravate the back pain include standing, walking. Patient is experiencing limitations and indicating pain as follows: increased pain during flexion/extension and movement/rotation of the back. The back

---

34    *See* Ex. C-05.
35    *See* Ex. C-09.
36    *See* Ex. D-04

KESTREL_017507

orthosis prescribed for this patient is for the following indication(s): To reduce pain by restricting mobility of the trunk. My treatment goals for the use of the back orthosis are to decrease patient's pain, improve patient's function, increase performance in activities of daily living and reduce medications. Movement of patient's lumbar region is limited during flexion, Patient indicates increased lumbar pain during extension. During flexion/extension of the knee, clicking, popping sounds may be heard. *I, Simon Grinshteyn, M.D., verify and confirm this order for the above named patient, and certify that the prescribed treatment and device is reasonably and medically necessary, according to the accepted standards of medical practice within the community, for this patient's medical condition.*"[37]

"This patient has had stabbing constant pain in their knee for 2 years. Conditions that cause or aggravate the knee pain include standing, walking. Patient is experiencing limitations and indicating pain as follows: increased pain during flexion/extension and movement/rotation of the knee. The knee orthosis prescribed for this patient is for the following indication(s): to reduce pain by restricting mobility of the knee. *I, Simon Grinshteyn, M.D., verify and confirm this order for the above named patient, and certify that the prescribed treatment and device is reasonably and medically necessary, according to the accepted standards of medical practice within the community, for this patient's medical condition.*"[38]

Ordering provider Grazia Oropesa, ARNP (emphasis added):

"*My assessment of the condition* of Mr. Markus today, a 73-year old Male was in regard to his complaint of lumbar pain. This is a level 8 pain, but is made even worse when aggravated by standing. *Based on my assessment, I consider this to be caused by general weakness, due to a pre-existing condition resulting in the current level of pain and discomfort for an extended time*. The goals of this treatment plan hopes to achieve for ▮▮▮▮▮ includes: improvement in patient's pain, improvement in patient's function, increase performance in activities of daily living, reduce medications, slow degeneration."[39]

"*My assessment of the condition* of Mr. ▮▮▮▮ today, a 73 year old Male was in regard to his complaint of shoulder pain. This is a level 8 pain but is made even worse when aggravated by standing. Based on my assessment, I consider this to be caused by general weakness, due to a pre- existing condition resulting in the current level of pain and discomfort for an extended time. *Based on my Assessment,*

---

37    *See* Ex. E-03.
38    *See* Ex. E-05.
39    *See* Ex. F-02.

9

KESTREL_017508

*I have determined it is medically necessary and appropriate to prescribe treatment today.*"[40]

"My assessment of the condition of Mr. ███████ today, a 73 year old Male was in regard to his complaint of knee pain. This is a level 8 pain but is made even worse when aggravated by standing. *Based on my assessment,* I consider this to be caused by general weakness, due to a pre- existing condition resulting in the current level of pain and discomfort for an extended time. *Based on my Assessment, I have determined it is medically necessary and appropriate to prescribe treatment today.*"[41]

For the lumbar, shoulder, and knee: "*I certify that the patient has the medical condition(s) listed and is being treated by me. All the information contained in this physician's order accurately reflect the patient's medical conditions(s) and is medically necessary with reference to the standards of medical practice for this patient's condition(s). The medical records for this patient substantiate the prescribed treatment plan.*"[42]

Ordering provider Dr. Marianna Zelenak, DO, completed a Comprehensive Knee Laxity Test and noted:

"Based on my evaluation of the patient's condition, I am ordering the following device(s) Brace (Knee), includes fitting and adjustment. The patient has been instructed to wear the device daily, as needed. The benefits of this device, which is an alternative, non-invasive method to potentially relieve pain has been explained to the patient who is interested in this treatment. Based on my Assessment, I have determined it is medically necessary and appropriate to prescribe treatment today. For the patient's complaint of pain, I am prescribing this device. The patient will benefit by helping address any or all of the following: give support to weak muscles, improve patient's pain, improve patient's function, increase performance in activities of daily living, improve ambulation, reduce medications, slow degeneration, provide stability, provide support."[43]

## 3.3 The packing slip, USPS or UPS tracking number, and telephone calls confirm that the items were received as billed.

Kestrel Medical delivered the proper items to each patient, confirmed by the packing slip and USPS or UPS delivery confirmation for each of the five patients.

For each patient, the order was confirmed by telephone. In each of the Five Claims, Kestrel Medical confirmed that the patient consented to receive the equipment. Moreover, Kestrel Medical maintains robust error reporting protocols. If a patient had not been satisfied with the item for any reason–including if the product was refused, returned, or not received as billed–

---

40      *See* Ex. F-06.
41      *See* Ex. F-10.
42      *See* Ex. F-04, 08, and 13.
43      *See* Ex. G-08.

Case 2:24-cr-00040-JPS      Filed 01/24/25      Page 10 of 98      Document 26-4

KESTREL_017509

Kestrel Medical would be promptly informed of such errors soon after delivery to the prescribed patient.

For all Five Claims, Kestrel Medical did not receive any complaints or indication that there was an issue. Kestrel Medical's comprehensive records of the Five Claims confirm that the items were delivered, appropriately billed, and not refused or returned.

## Reasonable and Medically Necessary DMEPOS Orders

| Accepted Delivery | Delivery Date | Items | Patient confirmation | Confirmation |
|---|---|---|---|---|
| ■ | 08/17/20 | 1 Solace LSO (back brace); 1 OA Reliever Left (knee brace); 1 OA Reliever Right (knee brace); 2 Suspension Sleeves[44] | Phone | Packing slip[45] UPS Tracking #[46] |
| ■ | 03/25/20 | 1 OA Unloader Knee Brace, Left; 2 Trend Suspension Knee Sleeves; 1 OA Unloader Knee Brace, Right[47] | Phone | Packing slip[48] USPS Tracking #[49] |
| ■ | 04/23/20 | 1 OA Unloader Knee Brace, Left; 2 Trend Suspension Knee Sleeves; 1 Unloader Knee Brace, Right; 1 Universal Back Brace[50] | Phone[51] | Packing slip[52] USPS Tracking #[53] |

---

44    *See* Ex.C-13.
45    *See* Ex. C-13.
46    *See* Ex. C-14.
47    *See* Ex. D-07.
48    *See* Ex. D-07.
49    *See* Ex. D-08.
50    *See* Ex. E-08.
51    *See* Ex. E.1, which includes notes recorded on 4/21/20 by Kestrel Medical that the patient "needs braces. good to ship. no questions."
52    *See* Exhibit E, p. 000008.
53    *See* Ex. E-09.

Kestrel Medical LLC Rebuttal Statement – Reference Number CSE-200903-00010

KESTREL_017510

| | | | | |
|---|---|---|---|---|
| ■ | 08/05/20 | 1 OA Reliever, Left; 1 Suspension Sleeve; 1 Shoulder Abduction System; 1 Solace LSO[54] | Phone | Packing slip[55] UPS Tracking #[56] |
| ■ | 03/26/2020 | 1 OA Unloader Knee Brace, Left; 1 Suspension Knee Sleeve[57] | Phone[58] | Packing slip[59] USPS Tracking #[60] |

To facilitate and ensure compliance, Kestrel Medical uses an independent third party, Medical Billing Solutions Nationwide Inc. ("billing expert"), for its billing services. The billing expert services hospitals and physicians throughout the nation, and its sole expertise is in billing and collecting claims for durable medical equipment. Medical billers are widely used to facilitate the claims-paying process and are seen as "an extension of the physician's reimbursement process."[61] Kestrel Medical's use of the billing expert further confirms that the claims were properly payable.

Before Kestrel Medical ships any of the physician-prescribed DMEPOS to a patient, it relies on the billing expert's verification process. When Kestrel receives an order, it informs the billing expert, who then verifies whether the potential customer has received the prescribed equipment in the past two years. If the patient has not, the billing expert informs Kestrel Medical, who then proceeds with the shipment of the device, in addition to meeting all the other pre-requisites. The billing expert performs this verification process for all patients, regardless of the referral source. This verification process occurred for the Five Claims.

## 4    Kestrel Medical was entitled to pre-suspension notice because it is not a threat to the integrity of Medicare.

Kestrel Medical was entitled to pre-suspension notice because it has not taken any past action to demonstrate it hinders the ability for SGS Southeastern Unified Program Integrity Contractor, CMS, or any other payor to recover an overpayment. Kestrel Medical has never been audited, never been a defendant in a civil case alleging the submission of false claims, and automatically voids any order in its system as soon as it is returned to its facility. Further, after delivery of its DMEPOS is confirmed and the claim submitted, Kestrel Medical operates in line with the payors preferred processes to notify the payor to recoup or offset payment.

---

54    *See* Ex. F-14.
55    *See* Ex. F-14.
56    *See* Ex. F-15.
57    Exhibit G, p. 000011.
58    *See* Ex. G.1, which includes notes recorded on 3/26/20 by Kestrel Medical that the patient "wants and needs knee brace. no questions. good to ship."
59    *See* Ex. G-11.
60    *See* Ex. G-13.
61    *See* "What is medical billing", *available at*: https://www.americanmedicalbillingassociation.com/.

Case 2:24-cr-00040-JPS    Filed 01/24/25    Page 12 of 98    Document 26-4

KESTREL_017511

In 2018 Kestrel Medical obtained DMEPOS accreditation from CMS-approved[62] Board of Certification/Accreditation International and remains properly accredited today. After completing the rigorous application process overseen by CMS, accreditation certifies that Kestrel Medical meets CMS' Quality Standards[63] and establishes the entity will routinely comply with ongoing responsibilities, including permission for unannounced site visits. Thus, Kestrel Medical is not only qualified to receive payments from Medicare but a good steward of those funds.

Also, for all Five Claims, each recipient is a Medicare beneficiary. The Five Claims' comprehensive records indicate that each patient possessed a valid Medicare ID number at the delivery time.[64] A Medicare ID number denotes that CMS has authorized such individuals to receive Medicare benefits.[65] Thus, CMS cannot rely on the allegations of fraud against Kestrel Medical for the claims provided because fraud requires the delivery of an unauthorized benefit.

For the above reasons, good cause exists to remove the suspension of Medicare payments to Kestrel Medical—and it should be removed immediately

Please contact my office if you require any additional information.


Sincerely,

**JACKSON LLP**

Connor D. Jackson
Attorney


*Exhibits attached.*

---

62    *See* "DMEPOS Accreditation Organizations", updated 04/27/2020, *available at*:
      https://www.cms.gov/files/document/dmepos-accreditation-organizations.pdf.
63    *See* "Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Quality
      Standards", *available at*: https://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-
      Programs/Medicare-FFS-Compliance-Programs/Downloads/Final-DMEPOS-Quality-Standards-
      Eff-01-09-2018.pdf
64    ███████████████████████████████████████████████
65    ███████████████████████████████████████████████

Case 2:24-cr-00040-JPS    Filed 01/24/25    Page 13 of 98    Document 26-4

KESTREL_017512



Kestrel Medical LLC Rebuttal Statement – Reference Number CSE-200903-00010

14

KESTREL_017513

# EXHIBIT A

KESTREL_017514