# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                        Plaintiff,

v.

BRUCE M. JOHNSON,

                        Defendant.

Case No. 24-CR-40-1-JPS

**ORDER**

## 1.    INTRODUCTION

In August 2024, the grand jury returned a ten-count Superseding Indictment charging Defendant Bruce M. Johnson ("Defendant") with one count of conspiracy to defraud the United States in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), 1320a-7b(b)(1)(B), 1320a-7b(b)(2)(A), and 1320a-7b(b)(2)(B); seven counts of knowingly and willfully paying healthcare kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. 2(a); and two counts of knowingly transferring assets in contemplation of bankruptcy in violation of 18 U.S.C. § 152(7). ECF No. 17. In January 2025, Defendant filed a motion to suppress evidence obtained from a search of Kestrel Medical Supply Company's ("Kestrel") email account—a company partially owned by Defendant—on the basis that the warrant application for the search failed to establish probable cause that Defendant engaged in criminal activity. ECF No. 25; ECF No. 26 at 8–10. Defendant also argued that the warrant contained material omissions, warranting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (a "*Franks* hearing"). ECF No. 26 at 11–18. That motion fully briefed. ECF Nos. 26, 33, 26. Magistrate

Judge Nancy Joseph then issued a report and recommendation (the "R&R") that the motion to suppress be denied. ECF No. 39 at 5–8, 15. Separately, Magistrate Judge Joseph issued a final ruling denying Defendant's motion to the extent it sought a *Franks* hearing. ECF No. 38 at 8–13, 15.

Defendant filed timely objections to the R&R and to Magistrate Judge Joseph's denial of his motion for a *Franks* hearing, the Government responded to the same, and Defendant replied. ECF Nos. 40, 46, 49. For the reasons explained in the balance of this Order, the Court will adopt the R&R and accordingly deny the underlying motion to suppress. Further, as it finds no clear error in Magistrate Judge Joseph's ruling denying Defendant's motion for a *Franks* hearing, the Court will not disturb that ruling.

Lastly, the Government has requested a speedy trial finding excluding time between April 19, 2025 and the final ruling on Defendant's motion to suppress. *See* ECF No. 37. Defendant does not oppose this request. *Id.* at 3. For the reasons discussed below, the Court finds that the interests of justice serve a finding to exclude time between April 19, 2025 and July 8, 2025.

## 2. STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court is obliged to analyze de novo "those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The Court's review encompasses both the magistrate judge's legal analysis and factual findings. *See id.*; *see also* Fed. R. Crim. P. 59(b)(2). In turn, "[p]ortions of a recommendation to which no party objects are reviewed for

clear error." *United States v. Musgrove*, 845 F. Supp. 2d 932, 937 (E.D. Wis. 2011) (citing *Johnson v. Zema Sys. Corp.*, 170 F.2d 734, 739 (7th Cir. 1999)).

Separately, when considering timely objections to non-dispositive rulings of magistrate judges—such as a ruling on a motion for a *Franks* hearing—the Court "must . . . modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A) (permitting a district judge to "reconsider any pretrial matter" that a magistrate judge has determined "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law").

### 3. FACTUAL BACKGROUND

The parties generally agree with Magistrate Judge Joseph's recitation of the background facts. *See* ECF No. 46 at 2 n.1 (noting that the facts, as provided by the R&R, come from Defendant's motion to suppress and attachments because "the Seventh Circuit has counseled against reliance on evidence submitted by the government that is extrinsic to the affidavit" that supported the warrant (citing *United States v. Sanford*, 35 F.4th 585, 598 (7th Cir. 2022))). Thus, the Court adopts the background facts as set forth in the R&R and briefly summarizes them here. The Court includes additional details from, and citations to, the parties' first set of briefing on the motion to suppress and from the objections, response, and reply, as appropriate for context.[1]

On March 16, 2022, FBI Special Agent Jill Dring ("Agent Dring") received a warrant to search an email address associated with Kestrel: kestrelmedical@gmail.com (the "Kestrel Email"). Defendant is an owner of

---

[1]Internal citations within the R&R, the objections, the response, and the reply are omitted for brevity.

Kestrel. The warrant, among other information, sought "the content of all emails associated with the [Kestrel Email] from January 1, 2018, through the present." ECF No. 26 at 2. The warrant was issued based on the contents of Agent Dring's supporting affidavit (the "Affidavit"), which alleged that there was probable cause to believe that Defendant had committed violations of 18 U.S.C. § 1347 (healthcare fraud) and of 31 U.S.C. § 3729 (the False Claims Act). These statutes both require knowing or willful fraudulent conduct. 18 U.S.C. § 1347; 31 U.S.C. § 3729(a).

The Affidavit first described how the investigation into Kestrel began as part of a nationwide investigation into telemedicine schemes involving payment of illegal bribes and kickbacks in exchange for physicians' prescriptions for Durable Medical Equipment ("DME") such as arm, leg, back, and neck braces. *See* ECF No. 26 at 2. After providing background information on Medicare's rules and regulations, the Affidavit then describes a typical telemedicine scheme.

First, telemarketers contact Medicare beneficiaries and collect patient information. This step can be initiated by telemarketers cold calling beneficiaries or by the beneficiaries responding to advertisements. During this call, a call center representative offers free or low cost DME to the beneficiary then pressures the beneficiary to speak with a physician preferred by the marketing company, rather than the beneficiary's own provider. Next, the beneficiary has a brief telephone consultation with a marketing company-preferred physician (though, this step is sometimes skipped altogether). This consultation may be very brief, at times lasting less than a minute. At the end of this consultation the physician authorizes a prescription for DME and receives a kickback from the marketing company for their participation; this prescription violates Medicare rules

which require that (1) an ordering physician conduct a medical examination of the beneficiary and document medical necessity for DME, and (2) the physician have a prior relationship with the beneficiary. Finally, the telemarketing company sells the signed physician's prescription to an authorized Medicare DME supplier that then bills Medicare for the DME.

The Affidavit then provides that Kestrel is an authorized Medicare DME supplier that has been enrolled in the Medicare program since August 2018. Kestrel initially struggled to make money, earning approximately $74,000 in revenue for approximately 95 claims in 2019. Kestrel's annual revenue jumped to $2,900,000 made from approximately 2,100 claims in 2020, after Defendant's co-defendant, Michael Comino, became involved with Kestrel and brought his marketing relationships with him. ECF No. 26 at 4. In 2020, Kestrel paid approximately $1,406,691 to marketing companies.

In October 2020, Medicare, through Southeastern Unified Program Contractor SafeGuard Services, LLC ("SafeGuard"), suspended Kestrel's Medicare payments based on "credible allegations of fraud." The notice of suspension that Kestrel received indicated five "sample" claims that served as a basis for the suspension. ECF No. 26-3 at 2–3. This suspension related to an audit of Kestrel conducted by SafeGuard, which is a third-party contractor that Medicare hires to scrutinize claims. ECF No. 26 at 5. SafeGuard's audit of claims data for Kestrel from February 2018 to February 2021 revealed that Kestrel billed Medicare for $5,107,736.51 and was paid $2,601,688.73 during that period. SafeGuard also found, based on two "representative sample[s] of beneficiaries billed during this period," average overpayments of $737.47 for group one and $1,922.17 for group two.

SafeGuard also interviewed fourteen beneficiaries [2] and discovered that "most" were solicited telephonically and did not need DME. Further, two of the fourteen were billed for DME they never received, and thirteen of the fourteen did not receive a medical examination, nor did they have a prior relationship with the referring physician.

The suspension notice that Kestrel received in October 2020 also notified Kestrel that it had a right to submit a rebuttal statement indicating why the suspension should be removed, which Kestrel thereafter submitted. ECF No. 26-3 at 3; *see generally* ECF No. 26-4. Kestrel's rebuttal statement provided medical documentation and other supporting documentation surrounding the five "sample" claims used as a basis to suspend Kestrel's Medicare payments. *See generally* ECF No. 26-4. The Affidavit omitted that Kestrel sent a rebuttal. It also omitted that, in December 2020, SafeGuard issued a letter, after reviewing Kestrel's rebuttal, upholding its suspension of Medicare payments to Kestrel. ECF No. 26 at 15, n.8.

Roughly eight months later, in August 2021, SafeGuard reversed course and lifted the suspension on Medicare payments to Kestrel.[3] *Id.* At the same time, however, SafeGuard issued a final notice of overpayment to Kestrel. In that final notice of overpayment, SafeGuard identified Kestrel as a provider "without a . . . relationship with their referring physician, indicating a likelihood that DME was being dispensed without proper medical necessity being established." SafeGuard further concluded that 100% of Kestrel's claims it examined should have been denied. The Affidavit omitted the information that Kestrel's Medicare payment suspension was

---

[2]It is unclear how these fourteen were selected, be it randomly or otherwise.

[3]Nothing in the record suggests why SafeGuard lifted this suspension.

lifted, but included the final notice of overpayment, even though those documents were sent on the same day.

Additionally, the Affidavit details how Medicare received at least fourteen complaints about Kestrel's DME in 2020 and 2021, each of which requested that Kestrel pick up the DME. One such beneficiary received DME that they did not request or need.

Kestrel filed for Chapter 7 bankruptcy in January 2021. During those proceedings Defendant testified that he was not making much money because he did not have contacts with advertising and medical professionals.

Based on the above, Agent Dring concluded that Defendant and his co-defendant engaged in a scheme similar to the typical telemedicine scheme. The Affidavit then went on to establish how the Kestrel Email was utilized for Kestrel's business, specifically noting invoices for "Marketing Hours" that included the email as contact information for Kestrel, Defendant's use of the Kestrel Email for his Medicare Enrollment Application, Defendant's testimony during Kestrel's Chapter 7 bankruptcy proceeding that he used the Kestrel Email for business emails, and various forms of paperwork Defendant filled out that included the Kestrel Email as the contact email address for Kestrel. ECF No. 26-2 at 9–10. These facts established, according to Agent Dring, that "there are [likely] emails in the [Kestrel Email] account that are relevant to the investigation [of Kestrel] and cannot be obtained through means other than a search of that email account." *Id.* at 11.

4.      **ANALYSIS**

4.1     **Motion to Suppress**

Because Defendant objects to Magistrate Judge Joseph's reasoning that the March 16, 2022 warrant to search the Kestrel Email was supported by probable cause,[4] and thus the motion to suppress must be denied, the Court reviews this finding, and the majority of the R&R's underlying reasoning, de novo. *See supra* Section 2. However, Defendant concedes certain findings in the R&R that relate to the overall finding that the warrant was supported by probable cause, so the Court begins with a review of those conceded points.

### 4.1.1   There is No Clear Error in the Unobjected Portions of the R&R

First, the Court addresses the R&R's finding that arrest warrants need not be supported by "proof of intent," but rather "[a]ll that is required is for an issuing judge to find probable cause is for the total set of circumstances to create a 'fair probability' that evidence of a crime will be found within the place to be searched.'" ECF No. 38 at 7 (citing *United States v. Nazemzadeh*, No. 11-cr-5726, 2013 WL 544054, at *11–12 (S.D. Cal. Feb. 12, 2013) and *United States v. Abdallah*, No. H-07-155, 2007 WL 4334106, at *11

---

[4]Defendant also argued that he has standing to challenge the search of the Kestrel Email. ECF No. 26 at 8 (citing *United States v. Carlisle*, 614 F.3d 750, 756–57 (7th Cir. 2010)); *Carlisle*, 614 F.3d at 756 (explaining that standing to object to a search "should be addressed through the substantive Fourth Amendment question of whether the person challenging the search 'had a legitimate expectation of privacy'" in the property to be searched (quoting *Rakas v. Illinois*, 439 U.S. 128, 142 (1978)). Because the government did not respond to this assertion, it waived any argument to the contrary. *See generally* ECF No. 33. Magistrate Judge Joseph did not devote any space in the R&R to this argument, and neither will the Court. Instead, it presumes that Defendant's assertion is true and that he does, in fact, have a legitimate expectation of privacy in and standing to challenge the search of the Kestrel Email.

(S.D. Tex. Dec. 7, 2007) and quoting *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018)). Because Defendant concedes this finding in his objections brief, ECF No. 40 at 8, the Court reviews it only for clear error. "Clear error is an extremely deferential standard of review[] and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). The Court sees no clear error in this finding. *See United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020) (holding that probable cause is a lower bar that does not require a prima facie showing of criminal activity, but rather a requisite "degree of suspicion that arises from particular types of noncriminal acts, taken altogether" (citing *Illinois v. Gates*, 462 U.S. 213, 235, 243, n.12 (1983))); *Zamudio*, 909 F.3d at 176 ("[A]n affidavit submitted in support of a warrant application 'need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place.'" (quoting *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010))).

In the same vein, the Court finds no clear error in the R&R's reasoning—to which the Defendant also concedes—that the law does not require that evidence support that any certain individual committed a crime, but instead only requires a showing that evidence of a particular offense will likely be found in the location to be searched. ECF No. 38 at 7–8 (citing *United States v. Gibson*, 996 F.3d 451, 462 (7th Cir. 2021) and *Gates*, 462 U.S. at 238); ECF No. 40 at 8; *see Abdallah*, 2007 WL 4570189, at *4 ("Search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter they need

not even name the person from whom the things will be seized" (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555–56 (1978))).

### 4.1.2  Probable Cause Supported the Search Warrant

The Court next moves on to the objected portion of the R&R, namely, its "conclusion that SafeGuard's findings of alleged overpayments established probable cause of healthcare fraud and false claims." ECF No. 40 at 5; ECF No. 38 at 8 (R&R describing Agent Dring's reliance on SafeGuard's findings as the basis for the conclusion that the affidavit "sufficiently established [that] Kestrel was likely involved in a typical telemedicine scheme"). Because here, the only evidence presented to the magistrate judge in support of a search warrant was an affidavit, "the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause exists to support a search warrant when, "based on a totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *Id.* at 756 (citing *Gates*, 462 U.S. at 238 and *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000)). A judge may not rely solely upon "'conclusory allegations or a 'bare bones' affidavit" to support probable cause. *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 877 (7th Cir. 2008)).

In determining whether the evidence as presented establishes probable cause, the judge "deal[s] with probabilities," meaning "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also id.* at 236

Case 2:24-cr-00040-JPS    Filed 07/08/25    Page 10 of 22    Document 56

(describing how affidavits should be interpreted in a common sense rather than a hypertechnical manner when determining if they create probable cause). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *Rees*, 957 F.3d at 769. A magistrate judge's determination of probable cause should be "paid great deference by reviewing courts" and upheld so long as the magistrate had a "substantial basis" to conclude that a search would uncover evidence of wrongdoing. *Gates*, 462 U.S. at 236 (first quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969) then quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)); *see also Sims*, 551 F.3d at 643–44 (quoting *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008)). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000) (citing *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999), *cert. denied*, 528 U.S. 1130 (2000)).

Here, the Court agrees with the R&R's finding that the Affidavit provided enough for a "reasonably prudent person" to believe that searching the Kestrel Email would "uncover evidence of a crime." *Peck*, 317 F.3d at 756 (citing *Gates*, 462 U.S. at 238 and *Jones*, 208 F.3d at 608). Defendant's arguments rely largely on the mistaken logic that the Affidavit needed to establish that Defendant personally committed a crime, ECF No. 26 at 8–10; ECF No. 36 at 2, but as Defendant now concedes, this is the incorrect standard. *See supra* Section 4.1.1. The Court, having already rejected these arguments from Defendant, *see id.*, will engage with Defendant's remaining contentions.

Defendant first argues that the Affidavit's conclusion that Kestrel engaged in a telemedicine fraud scheme is "based on mere speculation and conjecture." ECF No. 26 at 9 (citing ECF No. 26-2 at 9). In response to this,

the Government lists the information that the Affidavit provided about Kestrel and telemedicine fraud schemes. ECF No. 33 at 6–7; ECF No. 46 at 4. Specifically, Agent Dring described the significant rise (nearly 4000%) in Kestrel's annual revenue from 2019 to 2020 after the involvement of Michael Comino, who brought marketing relationships and contacts to the business. She further noted that nearly half of Kestrel's revenue in 2020 was paid out to marketing firms. The Affidavit described how Medicare had received at least fourteen complaints about Kestrel between 2020 and 2021, each of which requested that Kestrel pick up the DME it delivered to the various Medicare beneficiaries. Further, SafeGuard audited Kestrel claims over a three-year period and interviewed fourteen beneficiaries, ultimately concluding that Kestrel lacked the appropriate relationship with referring providers as required by Medicare, and that 100% of the claims it examined should have been denied. That audit also found that "most" of the beneficiaries interviewed were solicited telephonically and did not need DME, and thirteen of the fourteen did not have a medical examination, nor did they have a prior relationship with the referring physician as required by Medicare. These facts support a reasonably prudent person's conclusion that Kestrel was somehow involved in a telemedicine fraud scheme. The Court rejects Defendant's characterization that the recommendation to deny Defendant's motion to suppress due to a proper probable cause finding was based solely on "Safeguard's findings of alleged overpayments," ECF No. 40 at 5–6, because the R&R articulated numerous additional facts as contributing to this recommendation, *see* ECF No. 39 at 8. The Court similarly rejects Defendant's argument that the R&R put "too much emphasis on Kestrel's revenue increase." ECF No. 40 at 6. As Defendant puts it, "[a] revenue increase, even a substantial one, *by itself*,

does not establish the payment of bribes or kickbacks." *Id.* (emphasis added). But, as just noted, the revenue increase was not by itself; rather, it was accompanied by several other factors that, together, supported a finding of probable cause. *See* ECF No. 39 at 8.

Defendant also complains that the Affidavit failed to specify what the complaints were based on for thirteen of the fourteen complaints that Medicare received about Kestrel's DME. ECF No. 26 at 9; ECF No. 36 at 2. Because this was just one of several facts supporting the probable cause finding—and the Court must not interpret the Affidavit in a "hypertechnical" manner, *Gates*, 462 U.S. at 236—the Court does not find this argument to be persuasive.

Defendant finally argues that the Affidavit did not allege that SafeGuard had been a reliable source in the past, implicitly arguing that its reliance on SafeGuard's findings was unreasonable.[5] ECF No. 26 at 10. Defendant argues that the probable cause finding was improper because Agent Dring "did not conduct an independent investigation" but rather "relied entirely on SafeGuard's allegations." ECF No. 36 at 2; ECF No. 49 at 2. Agent Dring also failed to corroborate any of SafeGuard's findings. ECF No. 40 at 7. According to Defendant, the R&R accordingly gives an "unjustified deference to SafeGuard's findings." ECF No. 49 at 2. But as noted above, SafeGuard's findings were just one of several sources of fact provided by the Affidavit. *See generally* ECF No. 26-2; *see also* ECF No. 39 at

---

[5]The Court notes that it is unclear whether Agent Dring provided in the Affidavit that SafeGuard was a reliable and accurate source of information. *See* ECF No. 26-2 at 1 (noting that the Affidavit relied on "Medicare data" which Agent Dring believed "to be accurate and reliable," but not defining whether third-party contractor information, such as SafeGuard's findings, was included within the meaning of "Medicare data").

8. While Agent Dring might have strengthened the Affidavit's reliability by corroborating SafeGuard's findings, Defendant has provided no law to support that she needed to do so. *See Sims*, 551 F.3d at 644 ("[S]imply because these methods 'could have been done but were not does not in any way detract from what was done." (quoting *Jones*, 208 F.3d at 207)). Further, as the Government pointed out, at least one other court has rejected the argument that an affidavit in support of a search warrant needs to independently verify a Medicare contractor's review of Medicare claims. *See Abdallah*, 2007 WL 4334106, at *12 ("There is no set requirement that[,] to be considered credible, all tips and information provided by third parties must be corroborated by subsequent police investigation."); *but see United States v. Alexander*, 573 F.3d 465, 476 (7th Cir. 2009) ("Police corroboration of an informant's tip is valuable in determining the reliability of the tip and, ultimately, in establishing probable cause." (citing *United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) and *United States v. Olson*, 408 F.3d 366, 372 (7th Cir. 2005))). Even considering that the Affidavit's telling of SafeGuard's findings about Kestrel was uncorroborated, a reasonably prudent person might still have found those findings, together with the  additional information provided about Kestrel's revenue increases and the complaints about Kestrel's DME received by Medicare, to support a finding of probable cause.

The Affidavit also supported the inference that evidence of healthcare fraud and False Claims Act violations could be found in the Kestrel Email. Defendant argues that the Affidavit does not suggest that the Kestrel email would contain any documents related to a telemedicine fraud scheme. ECF No. 36 at 3; ECF No. 40 at 7. The Government argues, however, that Defendant has conceded that SafeGuard's audit revealed potential

problems in the process of Kestrel's DME claims to Medicare; this resulted in Kestrel "submitting false claims to Medicare" which is "the last step in" a telemedicine fraud scheme. ECF No. 33 at 6 (citing ECF No. 26 at 11). Accordingly, the Government contends, the magistrate judge's finding "that evidence of health care fraud violations and false claims by [Defendant] and Kestrel was likely to be found in the contents of the Kestrel . . . [E]mail . . . was eminently reasonable." ECF No. 33 at 7, 11; *see also* ECF No. 46 at 4–5, n.2. The Court has already concluded that the Affidavit provided information from which a reasonable person could induce that Kestrel was somehow involved in a telemedicine scheme. Accordingly, because the Affidavit further provided that the Kestrel Email was repeatedly used and listed as the sole/primary business email for Kestrel and it was listed as a contact email for Kestrel in Medicare applications, the Court finds that the magistrate judge had a substantial basis to conclude that a search of the Kestrel Email would uncover evidence of wrongdoing. *Peck*, 317 F.3d at 756 (citing *Gates*, 462 U.S. at 238 and *Jones*, 208 F.3d at 608).

The Court must give substantial deference to the magistrate judge who issued the warrant and must resolve any questionable case in support of upholding the warrant. *Gates*, 462 U.S. at 236 (citations omitted); *Quintanilla*, 218 F.3d at 677. Accordingly, while there may be some debate as to how strong the showing of probable cause was, the Court finds that the Affidavit's facts "allow[ed] for a reasonable inference that there [wa]s a fair probability that evidence [of healthcare fraud and False Claims Act violations] would be found in" the contents of the Kestrel Email account. *Zamudio*, 909 F.3d at 176 (quoting *Aljabari*, 626 F.3d at 944). It will thus adopt

the R&R's finding that the search warrant was appropriately granted and will deny Defendant's motion to suppress.

### 4.1.2 Even if Probable Cause Did Not Support the Search Warrant, the Good Faith Exception Applies

Even if the Affidavit did not support a finding of probable cause and thus the search warrant was deficient, the Court agrees with Magistrate Judge Joseph's finding that the good faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984) applies here. ECF No. 38 at 13–15. Under *Leon*, even if a court finds that a warrant was deficient, the evidence obtained pursuant to that warrant should not be suppressed if the executing law enforcement officer could have "reasonably believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." *Koerth*, 312 F.3d at 866 (citing *Leon*, 468 U.S. at 920–24; *United States v. Danhauer*, 229 F.3d 1002, 1005–07 (10th Cir. 2000); and *United States v. Dahlman*, 13 F.3d 1391, 1397–98 (10th Cir. 1993)); *see also Leon*, 468 U.S. at 918–19. A law enforcement officer's "decision to seek a warrant is prima facie evidence that [s]he acted in good faith." *Peck*, 317 F.3d at 757 (citing *Leon*, 468 U.S. at 921 n.21 and *Koerth*, 312 F.3d at 868). To rebut this presumption of good faith reliance, a defendant must demonstrate that: (1) "the issuing judge abandoned his role as a neutral and detached arbiter"; (2) "the officer[] w[as] dishonest or reckless in preparing the supporting affidavit"; or (3) "the affidavit was so lacking in probable cause that no [reasonable] officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2004) (citing *Leon*, 468 U.S. at 923 and *Peck*, 317 F.3d at 757). "The burden to show unreasonable reliance on a warrant is heavy by design." *United States v. Matthews*, 12 F.4th 647, 653 (7th Cir. 2021) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)). What's more,

suppression should not occur "unless the supporting affidavit is 'plainly deficient' or where 'courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand.'" *Mykytiuk*, 402 F.3d 777 (quoting *Koerth*, 312 F.3d at 869).

The Court starts here with a presumption of good faith reliance because Agent Dring sought a warrant to search the Kestrel Email. Therefore, Defendant must rebut that presumption for the Court to grant his motion to suppress. Because the Court has found here that the affidavit supported a probable cause finding, and Defendant has not argued that the issuing magistrate "abandoned his role as a neutral and detached arbiter," *Mykytiuk*, 402 F.3d at 777 (citations omitted), Defendant may only rebut the good faith presumption by demonstrating that Agent Dring was "dishonest or reckless" in preparing the Affidavit. He has not done so. His only argument is that Agent Dring "cherry-pick[ed] . . . potentially inculpatory information and exclu[ded] . . . indisputable exculpatory information," ECF No. 26 at 18, and that this provides "ample circumstantial evidence that [Agent Dring] had an intent to deceive" the magistrate judge, ECF No. 36 at 6; *see also* ECF No. 40 (arguing, without any evidentiary support, that Agent Dring's "omission of the Rebuttal was a calculated decision to avoid undermining her probable cause narrative"). The Court does not agree. As Magistrate Judge Joseph pointed out in the R&R, the facts that Agent Dring omitted are not indisputably exculpatory as Defendant claims. This is because Kestrel's rebuttal related only to five claims and did not negate probable cause that Kestrel was somehow involved in a telemedicine fraud scheme. Further, the termination of Kestrel's medical payments was issued alongside a notice of overpayment, and it expressly noted that it should not

be construed as "any positive determination regarding [Kestrel's] Medicare billing." ECF No. 38 at 10–13 (citing ECF Nos. 26-4 and 26-6). Further, the Court's conclusion that there is no clear error in Magistrate Judge Joseph's denial of a *Franks* hearing, *see infra* Section 4.2, also supports that Agent Dring was not dishonest or reckless in preparing the Affidavit. *United States v. Hueston*, 90 F.4th 897, 904 (7th Cir. 2024) (defendant could not "overcome the presumption of good faith by showing dishonesty or recklessness since [the court had] already concluded that [the law enforcement officer who prepared the affidavit in support of the search warrant] did not commit a *Franks* violation."). That Defendant has failed to rebut the presumption of good faith reliance is an independent reason for the Court to adopt the R&R and deny Defendant's motion to suppress.

### 4.2 Motion for a *Franks* Hearing

The Court reviews Magistrate Judge Joseph's final ruling denying Defendant's motion for a *Franks* hearing for clear error. *See supra* Section 2. "Clear error is an extremely deferential standard of review[] and will only be found to exist where the 'reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Pinkston*, 440 F.3d 888 (quoting *Anderson*, 470 U.S. at 573). The Court, having no such conviction that Magistrate Judge Joseph committed a mistake, finds no clear error in her denial of Defendant's motion for a *Franks* hearing.

In order to obtain a *Franks* hearing "to explore the validity of a search warrant affidavit, a defendant must make a 'substantial preliminary showing' that: (1) the affidavit contained a material false statement; (2) the affidavit made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir.

2001) (quoting *Franks*, 438 U.S. at 155–56). This same standard applies when a defendant challenges an affidavit on the grounds that it omitted key facts. *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984). "[T]hese elements are hard to prove, and thus *Franks* hearings are rarely held." *Maro*, 272 F.3d at 821 (quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000). The challenging defendant must show that "the officer submitting the affidavit . . . acted recklessly because she seriously doubted or had obvious reason to doubt the truth of the allegations." *United States v. Thomas*, No. 23-cr-0002-bhl-1, 2023 WL 6842618, at *5 (E.D. Wis. 2023) (quoting *United States v. Johnson*, 580 F.3d 666, 670 (7th Cir. 2009) (internal brackets omitted)).

Applying this standard, Defendant fails on the first factor because he has not made a substantial showing that the facts omitted were "necessary to the determination of probable cause." *Maro*, 272 F.3d at 821. Defendant argues that Agent Dring acted either to intentionally mislead or with reckless disregard for the truth when she omitted the information contained in Kestrel's rebuttal to the suspension of its Medicare payments and when she omitted the fact that ultimately Medicare terminated the payment suspension. ECF No. 26 at 15–18; ECF No. 40 at 11–14. The Court will note that Agent Dring's omissions could be seen as problematic in that if Agent Dring had included the information in her Affidavit, the magistrate judge may have asked additional questions about the information surrounding SafeGuard's audit and findings. As it stands, he was unable to do so because Agent Dring omitted any information suggesting that SafeGuard may have discovered additional information or contrary information after its original suspension that relied on "credible allegations of fraud." Regardless, these omissions do not negate probable cause here when "the evidence is viewed as a whole and the . . . [C]ourt gives the [probable cause-

finding] judge great deference." *United States v. Glenn*, 966 F.3d 659, 661 (7th Cir. 2020).

Defendant's arguments that the Affidavit's omissions were material are unpersuasive because he conflates all of SafeGuard's audit process and findings with one line in its notice of suspension that the suspension was based on "credible allegations of fraud." ECF No. 26-3 at 2. But while the notice of suspension states that a sample of five claims "serve[d] as a basis for the determination to suspend [Kestrel's] Medicare payments," *id.*, SafeGuard's overall audit relied on much more, including an analysis of claims over a three-year period, interviews of fourteen beneficiaries, and a review of medical records that resulted in its finding that "100% of the claims examined should have been denied." ECF No. 26-2 at 8–9.

Even if the Court adopted Defendant's view, the Affidavit did not rely solely on SafeGuard's findings to reach the conclusion that Kestrel was somehow involved in a telemedicine fraud scheme. Agent Dring also relied on fourteen complaints that Medicare received about Kestrel's DME and the extreme jump in Kestrel's revenue streams from 2019 to 2020, along with the fact that nearly half of all Kestrel's revenue in 2020 was paid to marketing companies. *See Sims*, 551 F.3d at 645 (finding that an omission of certain facts did not warrant a *Franks* hearing because "there was already a sufficient amount in the affidavit to establish probable cause" and the omitted information "did not reach the level of constitutional materiality to a probable cause determination"). Accordingly, the Court finds no clear error in Magistrate Judge Joseph's ruling that Agent Dring's omissions were material to the probable cause determination, and it will not disturb her denial of a *Franks* hearing.

5.      **SPEEDY TRIAL FINDING**

The Government has requested a speedy trial finding excluding the time between April 19, 2025 (thirty days after the parties' briefing completed before Magistrate Judge Joseph) and the final ruling on Defendant's motion to suppress. ECF No. 37 (citing *United States v. Avila*, 106 F.4th 684, 698 (7th Cir. 2024) (noting that 18 U.S.C. § 3161(h)(1)(D) and 3161(h)(1)(H) work together to "automatically exclude from the speedy trial clock the time beginning with the filing of a pretrial motion until thirty days after the court receives the parties' post-motion-hearing briefs")). Defendant does not oppose this request. *Id.* at 3. Pursuant to the Government's request, the Court finds under 18 U.S.C. § 3161(h)(7)(A) and (B)(iv) that the ends of justice served by taking this action outweigh the best interest of the public and the defendant in a speedy trial. The Court makes this finding because the time excluded was necessary for a diligent review and preparation of a ruling regarding Defendant's motion to suppress, which presented complex issues. *Avila*, 106 F.4th at 700 (explaining that the complexity of a case or the legal issues involved can warrant excluding time under the ends-of-justice provision (citing *United States v. Chanu*, 40 F.4th 528, 548 (7th Cir. 2022)). Therefore, the period from April 19, 2025 to July 8, 2025 is excluded under the Speedy Trial Act.

6.      **CONCLUSION**

Based on the foregoing, the Court adopts Magistrate Judge Joseph's R&R and thus denies Defendant's motion to suppress. It further finds no clear error in Magistrate Judge Joseph's ruling denying Defendant's motion for a *Franks* hearing.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Nancy Joseph's Report and Recommendation, ECF No. 39, be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Defendant Bruce M. Johnson's motion to suppress, ECF No. 25, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that the period from April 19, 2025 to July 8, 2025 be and the same is hereby excluded under the Speedy Trial Act.

Dated at Milwaukee, Wisconsin, this 8th day of July, 2025.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge